**BESHADA FARNESE LLP**
Donald A. Beshada (DAB2909)
  dbeshada@gmail.com
108 Wanaque Ave.
Pompton Lakes, New Jersey 07442
Telephone:  (973) 831-9910
Facsimile:   (973) 831-7371

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PONTRELLI, in her individual capacity and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>MONA VIE, INC., a Utah Corporation, MONA VIE, LLC, a Delaware Limited Liability Company, and DOES 1-10, inclusive.<br><br>        Defendant. | CASE NO:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lisa Pontrelli individually and on behalf of all other similarly situated purchasers (hereinafter "Plaintiff(s)" or "the Class") of the Mona Vie Products brings this consumer class action against Mona Vie, Inc., Mona Vie LLC, and John Does 1 through 10, inclusive (the "Defendants") for unconscionable, unfair and deceptive business practices, and false advertising in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and the common law.

## NATURE OF THE ACTION

1.     The Mona Vie juice scam is the newest creation of noted multi-level marketing scheme architect, and prior "super juice" creator, Dallin Larsen, after his last venture was halted by the Food and Drug Administration because of false and misleading advertising. Much like Larsen's last "super juice" creation, Mona Vie is marketed and sold to vulnerable  consumers at an outrageously inflated price because Defendants and their "independent distributors" create false hopes for preventing and treating illnesses by generating false and misleading advertisements and claims about the health benefits of drinking Mona Vie juice. Defendants and their "independent distributors" are engaged in a conspiracy to unjustly enrich themselves to the maximum extent possible at the expense of consumers who fall victim to the false and misleading advertisements generated by Defendants and their co-conspirators. This is the Mona Vie Scheme. This lawsuit is designed to redress the harm done to New Jersey consumers as a result of the Mona Vie Scheme.

2.     Those who ignore history are bound to repeat it. Mona Vie's story is almost identical to that of Royal Tongan Limu -- another "super juice" product with too-good-to-be-true alleged health benefits. Both were created by Larsen. Both are based upon an exotic "superfood" found in remote locations of the world. Both marketing schemes were based on claims of outrageous health benefits from consuming the product ranging from curing cancer and diabetes to making your skin beautiful. Both were sold through multi-level marketing schemes where untrained "distributors" sell the product by extolling the unproven health benefits to unwitting consumers. Royal Tongan Limu came under FDA scrutiny for the false and misleading advertisements about its alleged health benefits and the product was ultimately taken off the market with the unsold inventory being poured into a landfill under FDA supervision.   The false and misleading

2

advertisements generated by the Mona Vie Scheme, which can best be described as propaganda, are just as offensive to the common law and consumer protection laws as was the Royal Tongan Limu advertising.

3.     The propaganda created through the Mona Vie Scheme is false and misleading about the nature of and benefits attributable to consuming Mona Vie juice. The propaganda is an essential component of the Scheme because the perpetuation of the belief that Mona Vie juice will cure or treat whatever health problems a consumer might have is the main reason Defendants are able to charge the wrongfully inflated price of approximately $45 for a 25 ounce bottle.

4.     The multi-level marketing sales structure is also an essential component of the Scheme. Defendants and their "independent distributor" sales force work together in a symbiotic fashion to sell as much wrongfully overpriced Mona Vie juice as possible.    Defendants know that their co-conspirator "independent distributors" generate false and misleading advertising about the health benefits of Mona Vie juice, but do not stop them because such advertisements generate sales of Mona Vie juice.  The most insidious form of this false and misleading advertising are the testimonials where individuals attribute miraculous medical breakthroughs to their individual chronic health condition to drinking Mona Vie juice.    Defendants, of course, taught their "independent distributors" how to generate such testimonials by themselves hiring individuals of modest celebrity to make their own misleading testimonials.

5.     Defendants are veterans of the multi-level-marketing scheme and are out to protect themselves and their unjust income stream derived from Mona Vie juice sales.  To do this, despite directly participating in the Scheme, Defendants let the "independent distributors" do their dirty work for them.   Defendants have learned through experience that this is best accomplished by trying to distance themselves from the wild and outrageous claims of health benefits attributable to

3

Mona Vie juice consumption made by the "independent distributors." Defendants have cleverly crafted "policies and procedures" for their distributors allegedly forbidding them from making outrageous claims about Mona Vie juice. However, this feigned attempt to distance themselves from the outrageous claims made is simply an effort to gain plausible deniability and shift blame to the "independent distributors" for the false and misleading advertisement which improperly drive sales and enrich Defendants. While maintaining this ruse, Defendants have and continue to explicitly and tacitly approve of false and misleading advertisements created and promulgated by the "independent distributors." The reason is simple; without the propaganda, Defendants do not reap the unjust profits that flow from consumer's belief that Mona Vie juice will cure their health problems.

6.     Plaintiff brings this suit on behalf of herself and all other similarly situated individual residents of the State of New Jersey ("Class" or "Class Members") to remedy the Defendants' past and current practice of causing consumers to pay wrongfully inflated prices for the juices Defendants sell based on a pervasive pattern by Defendants and fellow Scheme members of misleading consumers about the contents, properties and health benefits of those juice products. The juice products addressed herein are: Mona Vie Original, Mona Vie Essential, Mona Vie Active, Mona Vie Pulse, Mona Vie (M)mun, Mona Vie Kosher, Mona Vie E, Mona Vie E Lite, collectively "Mona Vie Products").

## THE PARTIES

7.     Plaintiff is an individual residing in the State of New Jersey. Plaintiff purchased Mona Vie for personal use in New Jersey during the Class Period. In doing so, Plaintiff relied upon advertising and other promotional materials, which were prepared and approved by Defendants and their agents and disseminated through national advertising media, containing the misrepresentations alleged

4

herein. Plaintiff did not receive the advertised benefits of Mona Vie and would not have purchased Mona Vie if she had known that Defendants' representations were false.

8.      Mona Vie, Inc. is a Utah corporation with its principal place of business being 10855 South River Front Parkway, Suite 100, South Jordan, UT 84095. Mona Vie, Inc. is in the business of advertising, selling and distributing Mona Vie Products and has been so engaged at all times relevant to the allegations contained herein. Mona Vie, Inc., directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New Jersey. Mona Vie, Inc. is the owner, manufacturer and distributor of Mona Vie, and is the company that created and/or authorized the false, misleading and deceptive advertisements and/or packaging of Mona Vie.

9.      Mona Vie, LLC is a limited liability company organized under the laws of the state of Delaware having its principal place of business at 10855 South River Front Parkway, Suite 100, South Jordan, UT 84095.   Mona Vie, LLC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New Jersey. Mona Vie, LLC is the owner, manufacturer and distributor of Mona Vie, and is the company that created and/or authorized the false, misleading and deceptive advertisements and/or packaging of Mona Vie.

10.     The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sues these Defendants by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show the true names and capacities of said Doe Defendants when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do

and did business in the State of New Jersey, including, but not limited to, this District. Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings and damages hereinafter set forth below.

11. Plaintiff is informed and believes and based thereon alleges that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

12. In committing the wrongful acts alleged herein, Defendants planned and participated in the furthered a common scheme by means of false, misleading, deceptive and fraudulent representations to induce members of the public to purchase Mona Vie. Defendants participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

13. Defendants, upon becoming involved with the manufacture, advertising, and sale of the Mona Vie Products and, in particular, the claims suggesting and/or outright stating that the Mona Vie Products could, in any way, provide any health benefits to consumers, were false, deceptive and misleading.

14. Defendants affirmatively misrepresented the "benefits" of the Mona Vie Products in order to convince the public to purchase and use the Mona Vie Products, resulting in profits to Defendants, all to the damage and detriment of the consuming public. Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations and herein alleged.

## JURISDICTION AND VENUE

15.     This court has original jurisdiction over this class action pursuant to 28 U.S.C. Section 1332(d) ("Class Action Fairness Act"), in that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are at least one hundred members of the proposed class, and at least one member of the proposed class is a citizen of a different state than Defendants.

16.     Venue in this Court is proper under 28 U.S.C. Section 1391 because Plaintiff suffered injuries/ascertainable loss as a result of Defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District; and (2) are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

17.     Mona Vie is the newest creation of multi-level marketing, "health juice" impresario Dallin Larsen. Prior to launching Mona Vie in 2005 and becoming its president and CEO, Mr. Larsen was an executive for Dynamic Essentials. Dynamic Essentials' staple product was a "health" drink product called "Royal Tongan Limu." Larsen and Dynamic Essentials claimed the juice was a "superfood" derived from a sea plant found off the Pacific Island of Tonga.

18.     Much like Mona Vie, the advertising surrounding Royal Tongan Limu was based on untrue allegations of the health benefits of Royal Tongan Limu. For example, Royal Tongan Limu was claimed to cure, prevent or treat diabetes, allergies, cancer and Alzheimer's disease, just to name a few.

19.     Advertising claims such as these and the countless other baseless and exaggerated claims of the health benefits and healing properties of Royal Tongan Limu were intentionally vague, misleading and designed to convince consumers

that the juice had health properties which it plainly did not, and Larsen and Dynamic Essentials used the alleged health benefits to charge an excessive premium for the product. Also, like Mona Vie Products, Royal Tongan Limu was sold through a multi-level marketing network.

20.    Within a few years of beginning operation, Dynamic Essentials was targeted by the Food and Drug Administration because of the unsubstantiated claims of therapeutic benefits espoused by Dynamic Essentials and its independent distributors. The FDA determined that the marketing of Royal Tongan Limn was in violation of the law and Dynamic Essentials was ordered to cease and desist operations by the FDA. Dynamic Essentials quit selling Royal Tongan Limn and was required to dispose of the unsold inventory under the supervision of the FDA - literally dumping it into a landfill in Illinois. In closing the chapter on Royal Tongan Limu, the FDA stated:

> Getting rid of these bogus products, from a company that was giving false information about health benefits to consumers,   underscores the message from the FDA to those who would mislead consumers about their health ... We will not tolerate companies that raise false hopes for preventing and treating illnesses when there   are more scientifically proven steps than ever before that consumers can take to improve their health.

FDA Press Release, November 10, 2003

21.    Not surprisingly, there are substantial parallels between the illegal Royal Tongan Limu scam and the Mona Vie Scheme set in motion by Mr. Larsen and Defendants:

> a.    Mona Vie Products are sold in juice/drink form. So was Royal Tongan Limu.

b.     Mona Vie Products are heavily marketed as having strong anti-oxidant properties. So was Royal Tongan Limu.

c.     Mona Vie Products are heavily marketed as containing a superfood discovered in a remote location of the world (the Acai berry from South America), making it new to America, as the principal ingredient.  So was Royal Tongan Limu (the sea plant from the South Pacific).

d.     Mona Vie Products are sold in bottles that resemble wine bottles in an effort to lend marketing credibility and an air of sophistication to the product. So was Royal Tongan Limu.

e.     Mona Vie Products are marketed and sold in the same price range as Royal Tongan Limu.

f.     Mona Vie Products are heavily marketed by internet videos promoting the natural ingredients and the substantial health benefits associated with the juices. So was Royal Tongan Limu.

g.     Mona Vie Products are heavily marketed as a daily drink, with Defendants recommending that the consumers drink an amount each day to achieve the maximum (alleged) health benefit. Royal Tongan Limu was marketed in  the same way.

h.     Mona Vie Products are solely marketed through a multi-level marketing system. So was Royal Tongan Limu.

i.     The most important similarity between Mona Vie Products and Royal Tongan Limu products is that both are/were marketed as having substantial  prophylactic, healing, therapeutic and curative powers for an almost limitless universe of diseases and conditions.

22.    The sales structure through which the Mona Vie Products are sold is essential to the success of the Scheme. As shown by the reference to Royal Tongan Limu, Defendants are veterans of the multi-level-marketing game which has plagued consumers for decades throughout this country.  Defendants set up an elaborate network of independent Mona Vie Distributors ("Distributors") who are held out to be independent, individual businesses from Defendants. The vast majority of Distributors are people with no training in the science of nutrition, nor is any such training required or provided by Defendants before becoming a Distributor.  In fact, most Distributors are people who simply work out of their home and who are seeking additional income. The Distributors and Defendants not only make money from selling Mona Vie Products, but also by convincing more individuals to become Distributors of Mona Vie Products.  Each Distributor has to pay a price to become a Distributor and the Distributor then sells the Mona Vie Products.

23.    The attempt to distinguish Defendants from the Distributors is a ruse intentionally established by Defendants in an effort to insulate them from liability created by the outlandish claims made by their Distributors.  As is set forth below, the relationship between the Defendants and the Distributors is an essential component of the Mona Vie Scheme. Defendants and the Distributors have a symbiotic relationship which results in a frenzy of misleading and false advertising and statements being made to and among the Distributors themselves and ultimately to the consumers to whom the Mona Vie Products are sold. The basic premise is simple - the more Mona Vie Products are sold, the more money Defendants and the Distributors make. What better way to sell Mona Vie Products than to convince customers that it will cure all that which ails them?

24.    Defendants and/or the Distributors recruit "medical experts" to offer vague, misleading and/or false testimony about the health benefits attributable to

the Mona Vie Products. The Distributors then utilize the vague, false and misleading testimony, as well as other misleading information learned through participation in the Scheme, to market the Mona Vie Products using equally, if not exaggerated, vague, misleading and/or false statements and advertisements.

25.    There is no better example of this frenzy of deception than the recurrence of "Doctor" Lou Niles in the Mona Vie propaganda.  Dr. Niles holds himself out to be a licensed, practicing MD oncologist. Upon information and belief, Lou Niles is neither an MD nor an oncologist. However, he is a frequent pitchman for the Mona Vie Products and is used by Scheme members to lend "credibility" to the false and misleading claims that the Mona Vie Products help treat cancer and interfere with the process of aging. The following exchange occurred between Lou Niles and an individual at a Mona Vie conference while "Dr. Niles" stands before the camera and crowd resplendent in his official looking medical scrubs.  This video was, and still is, available to consumers as it can be found by a simple search on www.youtube.com:

> **Question from audience**: I have a friend who has terminal cancer. She just got out of the hospital and they want to put her back in and she won't go back in.   If she starts taking Mona Vie, a bottle a day, or whatever, will it ease her pain in any way?

> **Lou Niles**: It will help her - it will add quality to her life. If she has more than 90 days of life left, there is a possibility of reversing it ...

This type of false and misleading statement is then passed like wildfire through the network of Distributors who then pass the information along to consumers about the health benefits of the Mona Vie Products as stated by "Dr. Niles."

26.    Defendants and Scheme members do not merely contend that the Mona Vie Products help cure cancer. In fact, Defendants and Scheme members

claim that Mona Vie Products can literally provide medical benefits to nearly every known medical condition. For example, in a post on www.monavieforum.net , it states the following:

> Below is a short list of conditions that natural healthy healing with Mona Vie may be an alternative to chemical based treatments:
> Fibromyalgia, Insomnia, Inflammation,  Asthma, Intestinal Disease, Heart Disease, High Blood Pressure, High Cholesterol, Weight Loss, Arthritis Pain, Back Pain, Stroke, Sleep Apnea, Diabetes, Skin Disorders, and Allergies.
>
> This same post lists 39 reasons to drink Acai (the primary ingredient in the Mona Vie Products) everyday:
>
> Extend Your Life
> Increase Your Energy and Strength
> Look and Feel Younger
> Maintain Healthy Blood Pressure
> Help Prevent Cancer
> Maintain Healthy Cholesterol Levels
> Promote Normal Blood Sugar and Manage Diabetes
> Enhance Sexual Function
> Help You Lose Weight
> Relieve Headaches and Dizziness
> Improve Quality of Sleep
> Improve Your Vision
> Strengthen Your Heart
> Inhibit Lipid Peroxidation
> Improve Disease Resistance
> Improve Immune Response
> Protect Your Precious DNA
> Inhibit Tumor Growth
> Reduce the Toxic Effects of Chemotherapy and Radiation
> Build Strong Blood
> Help Chronic Dry Cough
> Fight Inflammation and Arthritis
> Improve Lymphocyte Count

Treat Menopausal Symptoms
Prevent Morning Sickness
Improve Fertility
Strengthen Your Muscles and Bones
Support Normal Kidney Function
Improve Your Memory
Support Healthy Liver Function
Alleviate Anxiety and Stress
Brighten Your Spirit
Improve Digestion
Maintain Healthy Gums
Fight Fibromyalgia
Prevent Allergies
Protect Children's Health
Promotes Overall Wellness

27.    Who doesn't have one of these conditions? This list is obviously designed to target anyone with even the most basic medical condition or simply a desire for a healthy life. It is precisely these types of claims which are made and further embellished by Defendants and their Distributors in the course of carrying out the Mona Vie Scheme.

28.    As a central component of their advertising, Defendants themselves promote testimonials from people of modest notoriety who have allegedly had breakthrough medical results that they attribute to Mona Vie Products.    For example, on www.monavie.com, there was a lengthy testimonial from NASCAR driver Geoff Bodine wherein Mr. Bodine claims that Mona Vie Products allowed him to stop taking sleep aids, and cured his chronically sore wrists, ankles and knees that were the product of years of professional car and truck racing. There is no doubt but that Defendants were portraying, through Mr. Bodine's testimonial, Mona Vie Products as both a sleep aid and pain reliever.

29.    Further, this type of testimonial produced by Defendants acts as nothing less than a teaching aid to show its Distributors how to engage in false and

misleading advertising, thereby perpetuating the Mona Vie Scheme. Defendants and Distributors encourage other people who have had such alleged medical breakthroughs to offer personal testimonials about how consuming Mona Vie Products changed their lives. The testimonials praise Mona Vie Products for curing everything from the effects of a stroke to diabetes. These testimonials are widely publicized and designed to do nothing more than lead to unrealistic expectations that all consumers may experience similar benefits.

30.     This is merely a minute fraction of the type of misleading and false statements which have saturated the marketplace surrounding the Mona Vie Products. However, the theme of all advertising resulting from the Scheme is consistent - Mona Vie Products provide unheralded medical benefits and can help with whatever condition may be ailing an unwitting consumer.

31.     Defendants' false and misleading statements and advertising is not solely designed to trick consumers into buying Mona Vie products. It is also designed to trick consumers into becoming Distributors of Mona Vie Products by making them believe the juices are something that they simply are not. Most of the Distributors have learned the truth about the Mona Vie Products and are no longer serving as Distributors. In fact, it is estimated that between 70% to 90% of Distributors cease their relationship with Defendants within the first year. Because of the parallel avenues of profit flowing to Defendants from both the sale of Mona Vie Products and the purchasing of "distributorships" by individuals, Defendants' incentive to perpetuate the Mona Vie Scheme is clear.

32.     The use of the Mona Vie trademark and name in these false and misleading advertisements, statements and testimonials demonstrates that Defendants actually or impliedly endorse the advertisements and statements. The name of the Mona Vie Products and/or the trademark are utilized through the course of testimonials of miraculous recoveries from disease trademark or

14

remarkable improvements in chronic conditions that are designed to lead consumers to believe that they may be able to attain similar results simply by drinking Mona Vie Products.

33.   Defendants were and are aware of the potential for Distributors to make outlandish claims about the benefits of the Mona Vie Products. In fact, Defendants make it clear in their policies and procedures for Distributors that Distributors are forbidden from making claims about the medicinal or curative benefits of the Mona Vie Products.  Defendants' executives have stated publicly the fact that their "independent" sales staff is hard to control. In fact, Mr. Larsen has referred to attempting to control the Distributors as trying to "herd cats."

34.   Despite what appears to be a contractual ban to making outlandish claims about the prophylactic treatment and curative benefits of the Mona Vie Products, and a feigned air of corporate indignance by Defendants about the illegal advertising its fellow Scheme members produce, it is undisputed that Defendants benefit financially from whatever sales tactic sells the most Mona Vie Products. Defendants have allowed these false and misleading advertisements to proliferate and only stop them when absolutely forced to do so.

35.   Defendants have tried to erect an elaborate artifice to allow them to claim that the Mona Vie corporate entities do not endorse anything but the most sterile and straightforward of advertisements while knowing and explicitly allowing the Distributors, who are not Defendants' employees, to make outlandish claims about the health benefits of the Mona Vie Products in an effort to sell more juice. This is clearly an artifice to attempt to insulate Defendants from what is obvious liability for the false and misleading advertisements created by their Distributors and fellow Scheme participants.

36.   Defendants have orchestrated this Scheme with the intent of maximizing sales of Mona Vie Products through the proliferation of improper

15

advertising. In an effort to perpetuate the Scheme, Defendants try to keep a respectable distance from the outlandish claims of its Distributors. Defendants' efforts to distance themselves from the improper advertising generated by the Scheme are illusory and only allow them to reap further benefits from the Scheme. Defendants have intentionally created a corporate environment where the clear intent is to have consumers rely upon the false or misleading advertisements or statements generated by the Scheme. The end result of the Scheme is the purchase of wrongfully overpriced Mona Vie Products to the financial gain of Defendants and to the detriment of Plaintiff and Class Members.

***Plaintiff's Purchase Of The Mona Vie Products***

37.    Plaintiff purchased the Mona Vie Products in New Jersey during the class period.   Prior to purchasing the Mona Vie Products, Plaintiff saw, heard and relied upon advertisements, representations and statements made by Defendants or other Scheme members about the alleged health benefits of drinking Mona Vie Products.   The advertisements, representations and statements which were relied upon by Plaintiff resulted from the Mona Vie Scheme described herein and were embraced either tacitly or expressly by Defendants.

38.    Plaintiff used Mona Vie and did not experience any of the advertised benefits of Mona Vie. Plaintiff suffered ascertainable loss and lost money as a result of Defendants' conduct described herein.   Plaintiff would not have purchased Mona Vie had she known that Defendants' claims about the product were false.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this lawsuit on behalf of herself and the proposed plaintiff Classes under Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

40.    The proposed Class is defined as:

All individual residents of the state of New Jersey who purchased Mona Vie Products from July 2007 through the present.   Excluded from the Class are: (I) Individuals who, at any point, have served as a Distributor for Defendants; (2) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (3) Persons or entities who timely opt-out of this proceeding using the correct protocol for "opting-out" that will be formally established by this Court; (4) Any and all Federal, State and/or Local Governments, including, but not limited to, their Departments, Agencies, Divisions, Bureaus, Boards, Sections, Groups, Councils and/or any other subdivision, and any claim that such governmental entities may have directly or Indirectly; (5) Any currently sitting New Jersey State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice.

Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

41.    The Class comprises thousands of consumers throughout the State of New Jersey.  The Class is so numerous that joinder of all members of the Class is impracticable.  All of the dispositive questions of law and fact are common to the Classes.  The common questions include:

      a.  Have Defendants engaged in an overarching scheme between themselves and their Distributors to wrongfully profit by creating or tacitly approving false and/or misleading advertisement and statements about the health benefits of Mona Vie Products?

      b.  Was the purpose of the Mona Vie Scheme to increase sales of Mona Vie Products and thus the profits of the Scheme members?

      c.  Have Defendants created false or misleading advertisements and/or statements about Mona Vie Products which were made public?

d. Have Defendants' Distributors created false or misleading advertisements and/or statements about Mona Vie Products which were made public?

e. Have Defendants ever been aware of the production and/or publication of false or misleading advertisements or statements about Mona Vie products?

f. Have Defendants affirmatively approved false or misleading advertisements and/or statements about Mona Vie Products?

g. Have Defendants tacitly approved what they knew to be false or misleading advertisements and/or statements about Mona Vie Products?

h. If Defendants were aware of false or misleading advertisements or statements being created and publicized by their Distributors about Mona Vie Products, did Defendants take appropriate action based on that knowledge?

i. Did Defendants intend for consumers to rely on false or misleading advertisements or statements when considering the purchase of Mona Vie Products?

j. Did Defendants conceal, suppress or omit material information about the proven medical benefits of Mona Vie Products?

k. Did Defendants have a duty to be honest and forthright about the proven benefits of Mona Vie Products with consumers?

l. Did Defendants allow their trademark or corporate identity to be used on false or misleading advertisements or statements about Mona Vie Products?

m. Are the representations by Defendants and the Distributors about the content of Mona Vie Products accurate?

18

n. Are the representations by Defendants and the Distributors about the nutritional contents of the Mona Vie Products accurate?

o. Are the representations by Defendants and the Distributors about the nutritional contents of the Mona Vie Products provable by generally accepted, laboratory-based scientific analysis?

p. Are Defendants' sales tactics deceptive or unconscionable?

42.     Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests that are antagonistic to those of the proposed Class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of this type of litigation and who have the resources to do so.  The questions of law and fact common to members the Class, some of which are set out above, predominate over any questions affecting only individual members Class.

43.     A class action is the superior method for the fair and just adjudication of this controversy.  The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually.

44.     The trial and litigation of Plaintiff's and the proposed Class claims are manageable.  Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

45.     Unless an injunction is issued, Defendants will continue to commit the violations alleged herein, and the members of the proposed Classes and the general public will continue to be misled.

46.    If necessary, notice of this action may be affected to the proposed class in a manner provided in the Federal Rules of Civil Procedure, through contact information maintained in Defendants' records and through publication.

## COUNT ONE

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. § 56:8-1, et seq.)

47.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

49.    This Cause of Action arises under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., and is brought on behalf of the Plaintiff and members of the Class pursuant to §§ 56:8-19 and 56:8-2.12 of the Act.

50.    Section 56:8-2 provides, in relevant part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

51.    Plaintiff and other members of the Class are consumers who purchased consumer goods (the Mona Vie Products) pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

52.    Defendant manufactured, sold, distributed and/or advertised the Mona Vie Products and is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

20

53.     The acts, practices, misrepresentations, concealments, and omissions of material facts by Defendant made in connection with the sale and advertisement of the Mona Vie Products, and with the intent that others rely upon such concealment, suppression and omission, constitute unlawful practices within the meaning of the New Jersey Consumer Fraud Act.

54.     Defendant engaged in unlawful practices in the marketing and selling of the Mona Vie Products as set forth above.

55.     Defendant engaged in unconscionable practices in the marketing and selling of the Mona Vie Products as set forth above.

56.     As a result of the use and employment by Defendant of the unlawful acts, Plaintiff and the other members of the Class have suffered an ascertainable loss of money or property and have been damaged thereby.

57.     Plaintiff and the other members of the Class would not have purchased the Mona Vie Products if Defendant had disclosed that Mona Vie Products does not provide the advertised benefits.

58.     Under N.J.S.A.  §§ 56:8-2.11, 56:8-2.12 and 56:8-19, Plaintiff and the other members of the Class are entitled to a refund of all moneys acquired by Defendant by means of the unlawful practices alleged above, as well as compensatory damages, including treble damages, attorneys' fees, and cost of suit.

**COUNT TWO**

**FRAUD**

59.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

61.     Defendants represented, in a single, consistent and uniform manner,

the alleged benefits of the Mona Vie Products.

62.   Defendants' statements about the Mona Vie Products as set forth more fully above are false.

63.   Defendants knew or should have known that the representations set forth herein were false when such representations were made and/or made the representations recklessly and without regard for the truth.

64.   Plaintiff and the Class reasonably relied upon Defendants' false representations in purchasing the Mona Vie Products.

65.   Defendants' misleading and fraudulent conduct was knowing, deliberate, wanton, willful, oppressive and undertaken in conscious disregard of, and with reckless indifference to, Plaintiff and members of the Class' interest, and otherwise of the character warranting the imposition of punitive damages.

66.   Plaintiff and the Classes suffered real economic losses and harm as a result of Defendants' intentional misrepresentations and active concealment, as set forth specifically herein.

67.   Plaintiff's and the Class' reliance on Defendants' representations were a substantial factor in causing the harm to Plaintiff and the Class.

## COUNT THREE
## UNJUST ENRICHMENT

68.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

69.   As a result of Defendant's false and deceptive advertisements, promises and representations concerning the Mona Vie Products, and as a consequence of Defendant's unconscionable trade practices, its sharp and deceitful marketplace practices, and its false promises, all as aforesaid, the class members paid money to and conferred a benefit upon Defendant in connection with the sale

of the Mona Vie Products by Defendant to class members, which benefit was received and continues to be retained by Defendant.

70.   Retention of that benefit without reimbursement by Defendant to all class members would be unjust and inequitable.

71.   Retention of that benefit by Defendant at the expense of all class members would be unjust and inequitable.

72.   Defendant, as a result of its false and deceptive conduct as aforesaid, became indebted to class members for the sums paid by class members to Defendant for purchase of a misrepresented product.   Retention of said sums, without reimbursement, would result in the unlawful, unjust and inequitable enrichment of Defendant beyond its lawful rights in connection with the sale of the Mona Vie Products to class members.

73.   All monies paid by class members to Defendant for purchase of the Mona Vie Products, including all interest earned by Defendant on such monies while in wrongful possession thereof, should be disgorged by Defendant and reimbursed to class members under principles of unjust enrichment.

74.   As a proximate result of Defendant's conduct, members of the class were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the proposed Classes defined herein, pray for judgment and relief as follows:

A.   An order certifying that the action may be maintained as a Class Action;

B.   An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.   An order requiring Defendants to pay restitution to Plaintiff and all class members;

D.    Actual Damages of Plaintiff and all class members trebled in accordance with the CFA;

E.    Punitive Damages of Plaintiff and all class members;

F.    For pre-judgment interest from the date of filing this suit;

G.    Reasonable attorneys' fees;

H.    Costs of this suit; and

I.    Such other and further relief as the Court deems just and equitable.

DATED: August 1, 2013          **BESHADA FARNESE LLP**
                               Attorneys for Plaintiff


                               By:      /s/ Donald A. Beshada
                                        DONALD A. BESHADA (DAB2909)
                                        108 Wanaque Ave
                                        Pompton Lakes, New Jersey 07442
                                        Telephone:  973-831-9910
                                        Facsimile:  973-831-7371


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: August 1, 2013          **BESHADA FARNESE LLP**
                               Attorneys for Plaintiff


                               By:      /s/ Donald A. Beshada
                                        DONALD A. BESHADA (DAB2909)
                                        108 Wanaque Ave
                                        Pompton Lakes, New Jersey 07442
                                        Telephone:  973-831-9910
                                        Facsimile:  973-831-7371