UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LISA PONTRELLI,** in her individual capacity and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**MONAVIE, INC., MONAVIE, LLC., and DOES 1-10, inclusive,**<br><br>**Defendants.** | Docket No.: 13-cv-4649-WJM-MF<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is a putative class action based on allegations of consumer fraud. Plaintiff Lisa Pontrelli filed the First Amended Complaint ("FAC") individually and on behalf of a putative class of people who purchased MonaVie juice products from 2007 to present. Plaintiff principally alleges that Defendants falsely advertise their products' health benefits with the intent that consumers will rely upon such misrepresentations. (FAC at ¶ 70). Defendants MonaVie, Inc. and MonaVie, LLC filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed. There was no oral argument. L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **DENIED**.

I.   BACKGROUND

Named Defendants are MonaVie, Inc. and MonaVie, LLC (collectively "MonaVie"). Defendant MonaVie, Inc. is a Utah corporation with its principal place of business in South Jordan, Utah. (FAC at ¶ 10). MonaVie, Inc. is in the business of manufacturing, packaging, advertising, selling, and distributing MonaVie Products[1] and has been so engaged at all times relevant to the allegations

---

[1] "MonaVie Products" collectively refers to Defendants' juice products MonaVie Original, MonaVie Essential, MonaVie Active, MonaVie Pulse, MonaVie (M)mun, MonaVie Kosher, MonaVie E, MonaVie E Lite. (FAC at ¶ 1).

1

contained in the FAC. (*Id.*). Defendant MonaVie, LLC is a limited liability company organized under the laws of the state of Delaware, having its principal place of business in South Jordan, Utah. (FAC at ¶ 11). MonaVie, LLC manufactures, distributes, packages, and advertises MonaVie Products. (FAC at ¶ 11). MonaVie, LLC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through New Jersey. (FAC at ¶ 11). The FAC alleges that consumers paid wrongfully inflated prices due to Defendants' pervasive pattern of false and deceptive advertising of the contents, properties, and health benefits of the MonaVie Products. (FAC at ¶ 1).

Plaintiff is a New Jersey resident who purchased MonaVie Products for personal use during the Class Period. (FAC at ¶ 9). Plaintiff relied upon advertisements and other promotional materials containing the misrepresentations alleged in the FAC. (*Id.*). Plaintiff did not receive the advertised benefits of MonaVie and would not have purchased MonaVie if she had known that the Defendants' representations were false. (*Id.*).

### A. The MonaVie Juice Products

MonaVie Products are juices containing açai berry and a combination of other fruits such as pomegranates, grapes, and blueberries. (FAC at ¶¶ 21-22). The MonaVie Prodcuts are sold in 25-ounce bottles that have the shape commonly associated with a wine bottle and are priced beginning at approximately $40 per bottle. (FAC at ¶ 23).

### B. Advertised Health Benefits of MonaVie Products

The MonaVie brochure attached to the FAC states that the "Crown Jewel in the MonaVie Blend" is the açai berry, which the brochure claims is the "fruit of an Amazonian palm tree." (FAC, Exhibit A). The FAC quotes the University of Florida as saying açai "is considered one of the richest fruit sources of antioxidants." (*Id.*). The brochure claims that açai can, among other things, prevent blood clots and arteriosclerosis, promote better circulation, prevent and treat Alzheimer's disease, and improve mental focus, stamina, digestion, sleep, and sexual function. (*Id.*). The brochure goes on to list innumerable curative and preventative qualities of 17 other fruits contained in MonaVie Products, including aronia, nashi pear, camu camu, wolfberry, bilberry, acerola cherry, and lychee. (*Id.*).

The brochure contains testimonials that make incredible claims about the curative properties of MonaVie. One testimonial states, "after giving my 5-year-old daughter two ounces a day of the Açai Original Blend . . . she was much more calm and relaxed." Another states, "Twenty years ago, I was diagnosed with degenerative arthritis . . . the Açai Active Blend is the first product EVER that has totally amazed me . . . before I had finished the first bottle my pain was totally gone in those joints that had been so bad." A third states, "I underwent major surgery to repair a completely crushed pelvis . . . When the Açai Blend became available in January 2005, I stopped all my medications and replaced them with Açai Active Blend . . . before three weeks had gone by all of my pain had vanished."

The FAC alleges that Defendants posted a deceptive video on www.youtube.com. (FAC at ¶ 34). On this video, Dr. Lou Niles, whom the FAC alleges is not really an MD, tells an audience member that MonaVie can ease cancer pain and even reverse cancer in a patient with more than 90 days of life left. (FAC at ¶ 34). The FAC alleges that this video is one example of the Defendants recruiting "medical experts" to offer vague, misleading and/or false testimony about the health benefits attributable to the MonaVie Products. (FAC at ¶ 33).

The FAC alleges that the Defendants do not merely claim that the MonaVie Products help cure cancer but can provide many other medical benefits, which are listed on www.monavieforum.net. (FAC at ¶ 35). These include extending life, managing diabetes, reliving headaches and dizziness, and preventing morning sickness. (*Id.*).

### C. MonaVie's Knowledge About Falsity of Advertised Health Benefits

Plaintiff alleges that Defendants were aware that MonaVie Products did not provide the health benefits purported in their advertising. MonaVie's chief science officer, Ralph Carson, who purportedly created the juice, cautioned that the drink was "expensive flavored water." (FAC at ¶ 41). Carson stated, "Any claims made are purely hypothetical, unsubstantiated and, quite frankly, bogus." (FAC at ¶ 41). Defendants allegedly know that they advertised health properties of the MonaVie Products that have not been supported medically. (FAC at ¶¶ 43-45). In addition, MonaVie admits that its products do not cure, prevent, or mitigate a long list of diseases. (FAC at ¶ 43). Dallin Larsen, MonaVie's CEO and co-founder, admitted that MonaVie's products do not cure any diseases. (*Id.*).

### D. Plaintiff's Purchase of MonaVie Products

Prior to purchasing the MonaVie Products, Plaintiff saw, heard, and relied upon Defendants' advertisements, representations, and statements about the alleged health benefits of drinking MonaVie Products. (FAC at ¶ 54). The FAC alleges that consumers are willing to pay an inflated price for MonaVie Products due to the advertised health benefits. (FAC at ¶¶ 1, 35-38). Plaintiff used MonaVie Products and did not experience any of the advertised benefits. (FAC at ¶ 55). The FAC alleges that Plaintiff suffered ascertainable loss as a result of Defendants' conduct and would not have purchased MonaVie Products had she known that Defendants' claims about the products were false. (*Id.*).

### E. Defendants' Advertising and Marketing Scheme

MonaVie sells its product through a multi-level marketing distribution system. (FAC at ¶ 24). MonaVie set up an elaborate network of MonaVie Distributors who are held out to be independent, individual businesses. (FAC at ¶ 30). Each Distributor has to pay a price to become a Distributor before selling the MonaVie Products. (FAC at ¶ 30). The Distributors are people without any training in science or nutrition who pay the Defendants to become Distributors. (FAC at ¶ 30). The Distributors and MonaVie make money not only by selling MonaVie Products, but also by convincing more individuals to become MonaVie Distributors. (FAC at ¶ 30). The FAC further asserts that MonaVie's use of the multi-level marketing scheme is a ruse intentionally designed to avoid liability for the outlandish claims of its Distributers.[2] (FAC at ¶ 31).

Defendants' policies and procedures clearly forbid Distributors from making claims about the medicinal or curative benefits of the MonaVie Products. (FAC at ¶ 50). However, MonaVie executives are well-aware that their Distributors make false claims about the health benefits of MonaVie. (FAC at ¶¶ 48-52). Moreover, MonaVie benefits financially from whatever sales tactic sells the most MonaVie Products. (FAC at ¶¶ 50-52).

Plaintiff filed a Three-Count Amended Complaint on December 9, 2013 alleging:

---

[2] The FAC notes that MonaVie's CEO, Dallin Larson, previously used the same multi-level marketing scheme to avoid liability for outlandish claims made by distributors of another "superfood" health drink called Royal Tongan Limu, which Dallin's company Dynamic Essentials produced. The FDA determined that Dynamic Essentials had violated the law by making unsubstantiated claims about the therapeutic benefits of Royal Tongan Limu and ordered Dynamic Essentials to cease operation. (FAC at ¶¶ 25-28).

      Count 1: Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq*.)
      Count 2: Common Law Fraud
      Count 3: Unjust Enrichment

## II.   JURISDICTION AND VENUE

This court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act") because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and cost, there are at least one hundred members of the proposed class, and at least one member of the proposed class is a citizen of a different state than the Defendants.

Venue in this court is proper under 28 U.S.C. § 1391 because Plaintiff suffered injuries/ascertainable loss as a result of Defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District, and (2) are subject to personal jurisdiction in this District. *See Urrutia v. Harrisburg County Police Dep't.*, 91 F.3d 451, 462 (3d Cir. 1996).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief

above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV.  DISCUSSION

### A.  MonaVie is Liable For Misrepresentations Committed by Its Distributors Based on Law of Agency.

Defendants contend that the Plaintiff fails to identify a single misrepresentation or statement that MonaVie, Inc. or MonaVie, LLC made and that the misrepresentations presented are those of "unidentified third parties." (Reply Brief at 4). The issue is whether MonaVie is vicariously liable for the alleged misrepresentations of the Distributors based upon an agency relationship.

An agency relationship is created "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *New Jersey Lawyers' Fund for Client Protection v. Stewart Tit. Guar. Co.*, 203 N.J. 208, 220 (2010) (*quoting Restatement (Third) of Agency* § 1.01 (2006) (internal quotation marks omitted)). There need not be an agreement between the parties specifying an agency relationship; rather, the analysis will focus on their conduct. *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 337 (1993).

Plaintiff pleads facts creating the plausible inference of an agency relationship between MonaVie and the Distributors. According to the FAC, "each Distributor has to pay a price to become a Distributor and the Distributor then sells the MonaVie Products." (FAC at ¶ 30). Since the Distributors must first pay MonaVie for approval to use its trademark and sell its product, this demonstrates MovaVie's consent and authorization to have the Distributors act on their behalf. Furthermore, the fact that the Defendants provide clear policies and procedures for

6

the Distributors to follow establishes that MonaVie controls and directs the acts of its Distributors. (FAC at ¶ 50); *see Sears Mortg. Corp. v. Rose*, 134 N.J. at 337.

Determining that the Distributors are agents of the Defendants is consistent with the agency relationship in *Barton v. RCI, LLC*, 2013 WL 1338235 (D.N.J. Apr. 1, 2013). In *Barton*, the Defendant boasted a large affiliate network of resorts, which, through "Affiliation Agreements," were contractually authorized to advertise and promote memberships on Defendant's behalf. *Id.*, at *1-2. Since the Defendant contractually authorized their subsidiaries to act on their behalf and controlled how these subsidiaries sold memberships, the court found an agency relationship. *Id.*, at *19-20. Similarly, the Distributors in this case contract for the right to sell Defendants' products, and the Defendants manage and oversee the means by which the Distributors advertise the product. (FAC at ¶¶ 30, 50).

### B. Plaintiff Satisfies the Heightened Pleading Standard of Rule 9(b).

Plaintiff alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA") and common law fraud. Both causes of action must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a Plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the Defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (*quoting Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). "The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading." *Harkes v. The Accessory Corp., Inc.*, 2010 WL 919616, at *5 (D.N.J. March 10, 2010). To satisfy this standard, the plaintiff must plead or allege the who, what, when, where, and how of the events at issue. *See Hemy v. Perdue Farms Inc.*, 2011 WL 6002463, at *13 (D.N.J. Nov. 30, 2011) ("[T]he plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

Here, the Defendants seek dismissal of Counts One and Two on the basis that the Plaintiff fails to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). The Defendants argue that the Plaintiff makes only non-specific allegations. (Reply Brief at 12). Furthermore, the Defendants contend that the Plaintiff fails to make any claims that MonaVie actually made any of the alleged misrepresentations to consumers. (*Id.*). Finally, the Defendants argue that

the Plaintiff's assertion that the MonaVie Products failed to meet her health benefit expectations is not enough to state a fraud claim under Rule 9. (*Id.*). Despite these alleged deficiencies, at no point do the Defendants claim that they did not receive adequate notice from the Plaintiff.

Since the Plaintiff's allegations put the Defendants on sufficient notice of the charges they face, the Plaintiff meets the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiff sufficiently alleges the "who" by specifically identifying Defendants MonaVie, Inc. and MonaVie, LLC. (FAC at ¶¶ 10-12). Plaintiff identified the "what" and "when" components by specifically listing which MonaVie Products were at issue during the period of 2005 through the present and during the class period of July 2007 through the present. (FAC at ¶¶ 1, 25, 57). The Plaintiff sufficiently alleges the "where" component by identifying the advertising and marketing of the MonaVie Products in New Jersey (FAC at ¶¶ 19-39, 54-55). Finally, the Plaintiff demonstrates "how" the Defendants misrepresented their product by presenting the Defendants' claims regarding the alleged health benefits of the açai berry and other fruits contained in MonaVie Products. (FAC at ¶ 43-45). For the purposes of the instant motion, the Plaintiff has satisfied the Rule 9(b) pleading standard.

### C. Plaintiff Plausibly Pleads a New Jersey Consumer Fraud Act Cause of Action.

To establish a claim under the NJCFA, a plaintiff must demonstrate (1) unlawful conduct on the part of the defendant, (2) an ascertainable loss on the part of the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *See Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (*citing New Jersey Citizen Action v. Scherling-Plough Corp.*, 367 N.J. Super. 8 (App. Div. 2003)). Plaintiff has successfully stated an NJCFA claim.

#### 1. Unlawful Practice

An "unlawful practice" may be an affirmative act, a knowing omission, or a regulatory violation. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524-25 (D.N.J. 2008); *see also* N.J.S.A. § 56:8–2. Affirmative acts are defined as unlawful practices that include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation. *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 245 (2005). For an affirmative act of

deception, Plaintiff must show that Defendants' statements about its product are false. *See Mason v. Coca Cola*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011). Here, Plaintiff alleges that Defendants stated that MonaVie Products can cure cancer and other health problems, while knowing that they do not. (FAC at ¶ 35-37, 43).

### 2. Ascertainable Loss

A plaintiff must be able to demonstrate that "he or she suffered an 'ascertainable loss . . . as a result of' the unlawful conduct." *Thiedemann*, 183 N.J. at 246 (*quoting Weinber v. Sprint Corp*, 173 N.J. 233, 250-51 (2002)). An ascertainable loss may occur where a "consumer received less than what [he] was promised." *Lynch v. Tropicana*, 2013 WL 2645050, at *8 (D.N.J. June 12, 2013) (*quoting Union Ink CO. v. AT&T Wireless*, 352 N.J. Super. 617, 646 (App. Div. 2002)).

This case is factually analogous with *Lynch v. Tropicana*, which involved allegations that the Defendant was liable under the NJCFA for fraudulently misrepresenting that its juice was "100% pure and natural." *Id.*, at *1. The *Lynch* court found that payment of a price premium may satisfy the ascertainable loss requirement. *Id.*, at *8. Relying on the *Lynch* analysis of New Jersey's state law, this court finds that Plaintiff has established an ascertainable loss. Plaintiff paid a premium to get the advertised health benefits of MonaVie Products. (FAC at ¶ 54-55).

### 3. Causal Relationship

To establish causation, a consumer merely needs to demonstrate that her ascertainable loss was "a result of" the unlawful practice. N.J.S.A. § 56:8–19. Plaintiff alleges that as a result of Defendants' false advertisements, she paid a premium for a product that did not provide the health benefits as advertised and would not have purchased the product had it not provided those benefits. (FAC at ¶¶ 54-55).

In sum, Plaintiff has alleged all three elements of an NJCFA cause of action. Defendants' motion is denied with respect to Count One.

### D. Plaintiff Plausibly Pleads Common Law Fraud.

The elements of fraud are (1) material misrepresentation, (2) knowledge of falsity, (3) an intention that the other person rely on it, (4) reasonable reliance thereon by the person, and (5) resulting damages. *See Hemy v. Perdue Farms, Inc.*, 2013 WL 1338199 (D.N.J. Mar. 31, 2013) (internal quotation omitted).

Here, the Plaintiff alleges that: (1) the Defendants represented that MonaVie Products would provide a series of health benefits to its users; (2) the Defendants knew that these representations were false; (3) the Defendants intended that individuals would rely on these false representations and purchase MonaVie Products; (4) the Plaintiff did in fact rely on these false representations; and (5) Plaintiff suffered damages as a result of her reliance on these false representations. For these reasons, the common law fraud claim in Count Two survives the motion to dismiss.

### E. Plaintiff Plausibly Pleads Unjust Enrichment.

"To establish a claim for unjust enrichment, Plaintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). Defendants contend that a direct relationship between Plaintiff and Defendants is necessary for unjust enrichment. This is not correct.

"The requirement that a direct relationship between Plaintiff and Defendant be established does not . . . preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer." *Lynch v. Tropicana Products, Inc.*, 2013 WL 2645050, at *10 (D.N.J. June 12, 2013). The direct relationship requirement is meant to protect innocent third parties from liability where they did not unjustly retain a benefit from the Plaintiff. *See Stewart*, 877 F. Supp. 2d at 198 (holding that it would be inequitable to dismiss Defendant alcoholic beverage manufacturer from an unjust enrichment claim simply because Plaintiffs purchased product falsely labeled "all natural" from third-party liquor stores). Given that MonaVie benefits financially from their Distributors' sales tactics, MonaVie clearly retains financial benefits from consumers purchasing MonaVie products, and, therefore, MonaVie is not an "innocent party" that should be insulated from an unjust enrichment claim. (FAC at ¶¶ 30, 48-51); *see also Lynch v. Tropicana Products, Inc.*, 2013 WL 2645050, at *10 (holding that where the Defendants

capitalized on consumers' heightened demand for natural products by deceptively marketing its product, it constituted unjust enrichment). Since the Defendants benefit financially from their misrepresentations, the Plaintiff has plead a plausible unjust enrichment cause of action, and the motion to dismiss Count Three is denied.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 19, 2014**