NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LISA PONTRELLI**, in her individual capacity and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**MONAVIE, INC.** a Utah Corporation, **MONAVIE, LLC**, a Delaware Limited Liability Company, and DOES 1-10, inclusive,<br><br>        Defendants. | Civil Action No. 13-4649 (WJM)<br><br>**OPINION** |

**Falk, U.S.M.J.**

This matter comes before the Court upon Plaintiff's motion to transfer venue to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a). (CM/ECF No. 59.) The motion is opposed. The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion to transfer is **granted**.

# BACKGROUND

**A.     The Instant Action**

This is a putative class action for consumer fraud. Plaintiff Lisa Pontrelli ("Plantiff" or "Pontrelli") is a New Jersey resident. Defendant MonaVie, Inc. is a Utah corporation. Defendant MonaVie, LLC is a limited liability company organized under the laws of Delaware. MonaVie, Inc. and MonaVie, LLC (collectively "MonaVie" or "Defendants") have their principal place of business in South Jordan, Utah. (FAC at ¶ 10.) MonaVie is in the business of manufacturing, distributing and advertising juice products ("MonaVie Products").[1]

Plaintiff purchased MonaVie Products in New Jersey for her personal use. (FAC ¶ 54.) According to Plaintiff, Defendants advertised the health benefits of MonaVie Products to include, among other things, extending life, managing diabetes, relieving headaches and dizziness, and preventing morning sickness. (FAC ¶ 35.) Prior to purchasing MonaVie Products, Plaintiff claims she relied upon advertisements, representations, and statements made by Defendants about the alleged health benefits of drinking MonaVie Products. (Id.) Plaintiff claims that she did not receive the advertised benefits of MonaVie Products, that Defendants knew that their products did not provide the health benefits purported in their advertising, and that she would not have purchased

---

[1] "MonaVie Products" collectively refers to Defendants' juice products known as MonaVie Original, MonaVie Essential, MonaVie Active, Mona Vie Pulse, MonaVie (M)mun, MonaVie Kosher, MonaVie E and MonaVie Lite. (FAC ¶ 1.)

2

MonaVie Products had she known that Defendants' representations were false. (FAC ¶¶ 9, 41.)

Plaintiff commenced this class action on August 1, 2013. Plaintiff filed an Amended Complaint on December 9, 2013, on behalf of herself and all other similarly situated purchasers of MonaVie Products. The three-count Amended Complaint asserts claims for violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., common law fraud, and unjust enrichment. Plaintiff principally alleges that Defendants falsely advertised MonaVie Products' health benefits with the intent that consumers would rely upon such misrepresentations. (FAC ¶ 70.)

Following dispositive motion practice, and prior to the close of discovery and class certification briefing, the Court entered a consent order on January 22, 2016, staying the case pending settlement negotiations in a companion action involving MonaVie's marketing of its juice products, Harbut v. MonaVie, Inc.,12-1983 (C.D. Cal. 2013) ("Harbut"), then pending in the Central District of California. On February 21, 2017, Pontrelli and the plaintiff in Harbut moved before the U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") under 28 U.S.C. § 1407 to authorize an MDL in the District of Utah where an important declaratory judgment action, Starr Indem. & Liab. Co. v. MonaVie, Inc. Inc., 14-393 (D.Utah May 23, 2014) ("Starr"), is pending. The MDL Panel denied the motion on May 31, 2017. (CM/ECF No. 55).

On June 16, 2017, the Court entered an Order directing that all fact discovery proceed on an expedited basis, closing discovery on August 21, 2017, and providing that

3

any motion to transfer be filed by June 23, 2017. On June 21, 2017, Plaintiff moved to transfer venue to the District of Utah. Subsequent to the filing of the instant motion, the Central District of California transferred Harbut to the District of Utah.[2]

**B.     The Starr Action**

According to Plaintiff, Starr Indemnity and Liability Company ("Starr Indemnity") issued two insurance policies ("policies") to MonaVie. Starr Indemnity and MonaVie dispute whether the policies cover the claims filed by Pontrelli. On May 23, 2014, Starr Indemnity filed a declaratory judgment action to resolve the coverage dispute ("Starr"). MonaVie filed an Answer and Counterclaim on July 7, 2014.

On November 14, 2016, counsel for MonaVie filed a motion to withdraw stating that MonaVie's assets "were foreclosed upon" and that MonaVie was "no longer in business." On December 1, 2016, the District Court granted the motion. MonaVie failed to have new counsel enter an appearance on its behalf. On December 22, 2016, Starr Indemnity moved for entry of default. On December 23, 2016, Pontrelli and the plaintiff in Harbut moved to intervene in Starr. (Pl.'s Br. 5.)[3] According to Plaintiff, the motions remain pending.

---

[2]The Harbut court originally denied a motion to transfer to the District of Utah on June 23, 2017. However, on July 10, 2017, the court reconsidered and granted Harbut plaintiff's motion to transfer. Following the dismissal of defendant Juicey Acai, LLC ("Acai"), the court concluded that only one fact connected the case to California–plaintiff's purchase from Acai's website. Recognizing that all remaining parties, claims and alleged conduct occurred in Utah, the court, in the interests of justice, granted the motion to transfer.

[3]Citing Starr Indem. & Liab. Co. v. MonaVie, Inc. Inc., 14-393 (D.Utah May 23, 2014) (ECF Nos. 39, 41, 44, 45).

## C. Motion to Transfer

Plaintiff moved to transfer this case to the District of Utah pursuant to 28 U.S.C. § 1404(a) arguing that transfer is in the interests of justice and contending that changed circumstances–MonaVie's now defunct status and the repercussions from it– have radically altered the litigation and make the District of Utah the only logical place to continue this case. (Reply Br. 1.) Plaintiff argues that MonaVie's foreclosure and total lack of funds makes the case nearly impossible to resolve in the District of New Jersey because the only asset from which Defendants can pay anything are insurance policies, which are the subject of the Starr litigation in Utah. Plaintiff contends that MonaVie no longer exists and is no longer in New Jersey. Plaintiff contends that a disposition in Starr will have a direct implication on the instant case to the extent it determines whether the policies are available to pay for the defense, and settlement or judgment in this case. Plaintiff also points out that the majority of MonaVie's now former employees who Plaintiff seeks to depose, and who may be called to testify at trial, are based in Utah.[4] Plaintiff maintains that transfer would reduce the cost of litigation for MonaVie which is headquartered in Utah, as well as make it more convenient for the parties. Finally, Plaintiff notes that she has moved to intervene in Starr in an effort to prevent the entry of

---

[4] At the time Plaintiff filed this motion, discovery was still open. According to Plaintiff, MonaVie stated that it would not be representing the ex-employees and therefore Plaintiff would be required to secure their depositions in Utah by way of subpoena. Because discovery has since closed, Plaintiff's argument with respect to the impact of MonaVie's defunct status on discovery in this case is diminished.

a declaratory judgment by default against MonaVie and hoping to preserve insurance policies at issue to satisfy any judgment or pay for counsel in this case.

Somewhat strangely, MonaVie opposes the motion arguing that the factors to be considered by the Court weigh against transferring this litigation to the District of Utah.[5] MonaVie contends that the insurance coverage dispute in Starr has nothing to do with the legal and factual issues raised in Plaintiff's Amended Complaint. Asserting that there has been no change of circumstances since the institution of this lawsuit that would warrant transfer now, Defendants contend that Plaintiff's motion is actually a strategic attempt to engage in forum shopping. Finally, Defendants point to Plaintiff's failed attempt to centralize this case with the Harbut case before the MDL Panel as further reason why this case should not be transferred to the District of Utah now.

## DISCUSSION

### A. Transfer Standard Pursuant to § 1404(a)

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision

---

[5]MonaVie also relies on the Harbut court's original denial of a motion to transfer that case to the District of Utah on June 23, 2017. However, as explained above, on July 10, 2017, subsequent to the filing of the instant motion to transfer, the Harbut court reconsidered and granted Harbut plaintiff's motion to transfer. For this reason, MonaVie's reliance on this argument is diminished.

to transfer a case under § 1404(a) rests within the sound discretion of a district court. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973); Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses. . . .'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case "might have been brought," and (2) that in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 643 (D.N.J. 2004) (citations omitted). The moving party, however, is not required to show "truly compelling circumstances for . . . change . . . [of venue, but rather, that] all relevant things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).[6]

---

[6]As a threshold matter, the reviewing court must first determine whether the action could have been brought in the transferee district. Shutte v. Armco Stell Co., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). The venue statute limits transfer to a district or division "where [the case] may have been brought." 28 U.S.C. § 1404(a). An action may be transferred to another district only if that district would be proper venue for the action and that forum is capable of asserting subject matter jurisdiction over the claims and *in personam* jurisdiction over the defendants. See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). There is subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332 (d). (Am. Compl.) The District of Utah has personal jurisdiction over both defendants as they are residents of Utah. See 28 U.S.C. § 1332(c)(1). The parties do not dispute

The court balances private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995). The private factors may include: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records. Jumara v. State Farm Ins. Co., 55 F.3d at 879. Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. Id. Thus, courts consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." Id.; see also Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003). The "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citations omitted).

---

that the case could have been brought in the District of Utah.

**B.     Anaysis under the Transfer Stardard**

The Court finds that the interests of justice would be better served by transfer of the case to the District of Utah given that any remnants of MonaVie are in Utah. In light of the factually similar <u>Harbut</u> action recently having been transferred to Utah, and given that <u>Starr</u> is also pending in Utah, transfer will likely promote judicial efficiency, conserve judicial resources, and eliminate expense if all three matters are litigated there. Moreover, changed circumstances which have arisen since this lawsuit was instituted–specifically MonaVie going out of business and a foreclosure of its assets–favors transfer, not to mention the fact that MonaVie's former employees are in Utah. To permit this litigation to continue here would be the precise wastefulness that section 1404(a) was designed to prevent. For the reasons set forth more fully below, including the changed circumstances impacting this litigation, the Court finds that transfer is appropriate here.

A plaintiff's initial choice of venue generally is entitled to due consideration. <u>Shutte v. Armco Stell Co.</u>, 431 F.2d 22, 24 (3d Cir. 1970), <u>cert. denied</u>, 401 U.S. 910 (1971) (citation omitted.) This is particularly true when the plaintiff selects his home forum. <u>Sandvik, Inc. v. Continental Ins. Co.</u>, 724 F. Supp. 303, 307 (D.N.J. 1987) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 545 U.S. 235, 255 (1981)). Courts also give less weight to a plaintiff's forum preference when it chooses a forum that has little connection to the facts of a case. See <u>Tischio v. Bontex, Inc.</u>, 16 F. Supp. 2d 511, 521 (D.N.J. 1998); <u>Honeywell</u>, 817 F. Supp. at 481-482; <u>American Tel. & Tel. Co. v. MCI Communications</u>

Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) (citations omitted). A plaintiff's decision to move to transfer the action undermines any weight given its initial choice of venue. See Broadcom Corp. v. Qualcomm Inc., 2008 WL 3821404, *3 (D.N.J. Aug. 12 2008) (citing Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 500 (D.N.J. 1998)).

This is a somewhat unusual situation in that it is Plaintiff and not Defendants moving to transfer venue. Although Plaintiff brought this action in New Jersey, her initial choice of forum is not really important because she is the moving party under changed circumstances. See Broadcom Corp., 2008 WL 3821404, *3. Furthermore, because decisions to be rendered in two other cases pending in the District of Utah–namely Harbut and Starr– will likely have implications on the parties' claims in the instant case, Plaintiff's original choice to venue the case in New Jersey does not weigh against transfer now. While Defendants point out that the case has been pending here for sometime, the fact is that Plaintiff's counsel only first learned of the pendency of Starr in July 2016. (Declaration of George V. Granade ("Granade Dec.") ¶¶ 6-7). Moreover, this case was effectively stayed from January 22, 2016, through June 5, 2017. (CM/ECF No. 46.) Given these events, it is not unreasonable that Plaintiff did not file her motion to transfer until June 21, 2017, following the Court's entry of an amended scheduling order.

Defendants' preference to have the case continue in New Jersey is of little weight. The fact is both Defendants have their principal place of business in Utah. MonaVie is no longer in business and has no connection to New Jersey. To the extent it exists it is in

Utah. Moreover, Defendants will now have to litigate the nearly identical Harbut case in Utah since it was transferred from California to Utah on July 10, 2017. In light of these circumstances, and the fact that class certification motions have yet to be filed and no trial date has been set in this case, Defendants' preference to proceed in this District is of limited import.

Plaintiff concedes that consideration of where the claim arose weighs in favor of keeping the case in New Jersey. Plaintiff purchased MonaVie Products in New Jersey in reliance upon Defendants' allegedly false and misleading representations in advertising. But, as in Harbut, it is of little moment under the current circumstances.

The convenience of the parties weighs in favor of transfer. Courts look to the relative physical and financial condition of parties in evaluating convenience. Santi v. Nat'l Business Records Management, LLC, 722 F. Supp. 2d 602, 608 (D.N.J. 2010). Defendants are headquartered in Utah. MonaVie is also a defendant in the Harbut and Starr actions, both pending in Utah. It would appear that it would be more convenient for Defendants to litigate this case in Utah, along with the other cases pending there. Moreover, the financial condition of MonaVie weighs in favor of transfer to Utah. As stated above, MonaVie is out of business and lacks assets other than potentially the Starr insurance policies. At this juncture, Plaintiff claims that the insurance policies at issue are her only source of possible recovery. While Plaintiff is a New Jersey resident, she currently has a motion to intervene pending in the Starr action, and should it be granted,

she will be litigating that case in Utah. Therefore, it would be more convenient for all parties given their relative physical and financial condition to litigate all claims in Utah where two of the three cases naming MonaVie as a defendant are already pending.

Plaintiff has said all witnesses are in Utah. However, in fairness, she has not been very specific. But the fact is, all of the defense witnesses are in Utah. So this supports transfer. See Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp.2d 321, 331 (D. Del. 2009) (convenience of witnesses and access to sources of proof are important considerations in the 1404(a) analysis).

Practical considerations also weigh in favor of transfer. For one, a decision in Starr could implicate the interests of Plaintiff, as is evidenced by her motion to intervene in the case. Additionally, "[w]here related lawsuits exist, it is in the interest of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." Liggett Group v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518, 537 (D.N.J. 2000). While neither the Harbut or Starr actions are completely comprised of the same parties that are in this case, they share common issues of fact and the resolution, at least of Starr, arguably will effect Plaintiff's ability to settle or obtain and collect on a judgment against MonaVie.

In addition, the relative congestion of the two districts as a factor strongly favors transfer to Utah. The District of New Jersey is a heavily trafficked district. The Official

Court statistics maintained by the Administrative Office of the U.S. Courts indicate that New Jersey's weighted case average is heavier than Utah's.[7]

**C.      Change in Circumstances**

A change in circumstances may be a factor considered by the Court when deciding a motion to transfer. Broadcom Corp., 2008 WL 3821404, *6 (citations omitted). The presence of related cases in a transferee forum is a basis to grant a transfer. This consideration tilts the balance in favor of transfer even when the convenience of the parties and witnesses would suggest the opposite (which is not the case here). See id. (quoting Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001)).

The Court is satisfied that there has been a change in circumstances since the filing of this lawsuit to warrant transfer of this case to the District of Utah. First, subsequent to the commencement of this litigation, MonaVie went out of business. (Granade Dec. ¶ 5.) Its assets were overtaken by foreclosure. Simply put, the company is no longer in existence and MonaVie has no assets here. MonaVie's defunct status now makes this case nearly impossible to resolve in this District and proceeding with the litigation here is dubious, given the possibility that MonaVie is not here and there will be no assets to satisfy any possible judgment. While Starr is an action for indemnification and may not

---

[7]Administrative Office of the U.S. Courts, Judicial Business, Table C-1; U.S. District Courts–Civil Cases Commenced, Terminated, and Pending During the 12 Month Period Ending September 30, 2016 (Sept. 30, 2016) http://www.uscourts.gov/sites/default/files /data_tables/jb_c1_0930.2016.pdf.

share the same facts and causes of action asserted here, its disposition implicates Plaintiff's interests in this case. In fact, Plaintiff has moved to intervene in Starr to protect her interest in the insurance policies in the face of Starr Indemnity's pending motion for default against MonaVie. Second, since the filing of this action and more particularly, since the filing of this motion, Harbut has been transferred to Utah. At this juncture, it makes sense that the three actions related in some way to MonaVie or MonaVie Products be disposed of in the same court. Broadcom Corp., 2008 WL 3821404, *6 (citations omitted).[8]

## CONCLUSION

In sum, upon consideration of the totality of the circumstances, the Court concludes that the District of Utah is the most appropriate forum for litigation of this case. For the reasons stated above, Plaintiff's motion to transfer venue to the United States District Court for the District of Utah is **granted**. (CM/ECF No. 59.) A separate Order accompanies this Opinion.

---

[8]Defendants point to the MDL Panel's denial of Plaintiff's application to centralize the actions as a reason to deny transfer here. However, the MDL Panel's decision was rendered prior to the transfer of Harbut. More significantly, in denying the transfer, the MDL's Order provided that "cooperation among a few involved courts and counsel regarding discovery (such as on coverage issues or other matters here) is a preferable alternative to centralization." (CM/ECF No. 55.) Given the timing of the denial, and the MDL Panel's suggestion that centralization is not necessarily the right vehicle when only a few cases are involved, its actions are not particularly instructive on this motion.

                        **s/Mark Falk**  
                        **MARK FALK**  
                        **United States Magistrate Judge**

**DATED: October 27, 2017**